POOLER *et al.* v. CURTISS, appellant.

*Evidence — to affect credit of witness — taking usury.*

At the trial of an action to set aside a mortgage as usurious, a witness for the defense who had acted for defendant in the negotiation of the mortgage, was questioned as to whether he had not, on other loans by defendant to other parties, taken notes from them for sums in excess of legal interest paid to defendant. *Held*, that the evidence was inadmissible for the purpose of affecting the credit to be given to witness.

APPEAL by the defendant, Harry Curtiss, from an order denying a motion for a new trial, and also, from a judgment in favor of the plaintiffs, John Pooler and Levantia Pooler, his wife. The facts appear sufficiently in the opinion.

*J. A. & O. B. Steele* and *Francis Kernan,* for appellant.

*Earl & Smith,* for respondents.

MULLIN, P. J. This action was brought to set aside a mortgage given by John Pooler and wife to the defendant for the sum of $731.52, as being illegal and void for usury.

Mrs. Pooler desired to procure title to the premises described in the mortgage, which had been purchased on a foreclosure sale of a prior mortgage thereon by S. M. & A. Richmond, and for which they had paid the sum of $731 or thereabouts, and they agreed with Mrs. Pooler to convey the premises to her on being paid the amount paid by them for the same.

The husband, not having the money to pay for said premises, applied to the defendant to loan him the amount due to the Messrs. Richmond, and he and his wife would secure the loan by a mortgage on the premises, in which there should be inserted a covenant of his wife to pay said mortgage.

The defendant had not then the money but expected to have it, and told Pooler he wanted more than seven per cent for the use of it, and that he must see his son, D. J. Curtiss, as to that.

Pooler called on the son and requested him to aid in raising the money, and he promised to do so for five per cent on the sum loaned. This Pooler agreed to pay. Pooler soon after saw the

defendant, and, in answer to a question put by defendant, Pooler told him he had seen his son and arranged with him as to the excess above legal interest. The defendant then told him he could have the money.

In a short time defendant notified Pooler that he had the money, and it was then arranged that defendant should go to Little Falls and complete the loan. Defendant employed an attorney and went with him to Little Falls, and then the loan was made and the mortgage given. After these things were done defendant called Pooler's attention to the amount to be paid to his son, and Pooler then gave a note for the amount and delivered it to defendant. This note was retained by defendant, and it was afterward paid to him. This is substantially the case made by the plaintiff's witnesses. There are many other facts proved bearing upon the question of usury that are not necessary to be stated in the view we take of the case.

The defendant denies that the negotiation for the loan was as stated by the plaintiff's witnesses. He testifies that he did not enter into any agreement to receive more than lawful interest for the use of his money; he did not know of any agreement between Pooler and his son, that the son should receive any thing for aiding to procure the money, and, although he knew Pooler gave the son a note, he did not know it was for aiding in procuring the loan. The son was indebted to him and transferred to him the note of Pooler to apply on such indebtedness; that he had no interest in the note until it was transferred to him by his son.

The court, upon conflicting evidence, has found the mortgage usurious and ordered it to be set aside, without costs to either party.

Under these circumstances we cannot disturb this finding. Unless, therefore, some error was committed in the rulings on the trial or in denying the motion for a new trial on the ground of newly-discovered evidence, the judgment must be affirmed.

The plaintiff's counsel, on the cross-examination of defendant's son, was permitted by the court to inquire of the witness whether he had not, on loans being made by his father to divers other persons at different times, received notes of the borrowers, as was done in this case, for the excess of interest paid by them to his father beyond legal interest. To the reception of this evidence defendant's counsel excepted. I cannot agree with the learned judge that this evidence was competent for any purpose. It is conceded that the evidence was not

competent to establish usury in the loan to Pooler. *Jackson* v. *Smith,* 7 Cow. 717; *Spenceley* v. *DeMillott,* 7 East, 108.

But it was held to be admissible as bearing on the credit that should be given to the witness. In support of the competency of the evidence for this purpose we are referred to *Ross* v. *Ackerman,* 46 N. Y. 210. This question did not arise in that case. The question there was, whether defendant could prove that a brother of the plaintiff was in the practice of borrowing money at usurious rates of interest. It was excluded, and the court of appeals held it to have been properly excluded. PECKHAM, J., says: "Even if Reuben" (plaintiff's brother) "were the real plaintiff, the testimony was inadmissible. Usury in the discount of this note could not be proved by showing that the plaintiff had taken usury upon other notes. If the offer were made with a view to impeach the witness, the counsel should have called the attention of the court to that purpose. So of the offer on the cross-examination of Reuben Ross, Jr." (plaintiff's brother).

This language was understood by the learned judge who tried this cause as deciding that the evidence offered was admissible to impair the credit to be given to the witness Reuben Ross. But the point was not in the case, and the remark of PECKHAM, J., that "if the offer" (of the evidence) "was made with a view to impeach the witness the counsel should have called the attention of the court to that purpose," is not a ruling that the evidence was competent for that purpose. Had the judge so decided the decision would have been *obiter dictum* and not binding on us. The facts which the plaintiff's counsel was permitted to elicit from defendant's son, on cross-examination, were so far collateral that had he denied having taken part in such loans witnesses could not have been called to contradict him. A witness may be asked on cross-examination as to collateral matters, which if admitted by him have a tendency to impair the credit which would otherwise be given to his evidence, or affect injuriously his general character. Transactions or sayings, to have that effect, must be such as tend to show such a want of moral principle as to render it at least questionable whether he is entitled to be believed. In other words, the evidence must tend to show a want or defect of moral character. *People* v. *Blakeley,* 4 Park. Cr. 176. A man may be a disagreeable neighbor, tyrannical husband or father, he may be indolent and thriftless, and yet his character for truth not be impaired in the

slightest degree. Such defects of character would not be admissible in evidence on the cross-examination of a witness, for any purpose.

Taking usury is an indictable offense, and in some degree it may affect character; but it has never yet been held that it impairs the credit which would otherwise be given to the witness who takes it, still less can it be admissible against one not a party to the contract but who aids the usurer in effecting the loan. In the case of *People* v. *Genung*, 11 Wend. 18, the prisoner was indicted for obtaining a note by false pretenses, and the person from whom it was obtained was examined as a witness for the prosecution, and on cross-examination the prisoner's counsel proposed to ask him whether he had not frequently, during the session of the court, offered to the prisoner that if he would settle the subject-matter of the indictment he, the witness, would leave the court and not appear against him. The testimony was objected to and excluded.

The prisoner was convicted, and the case was removed into the supreme court by certiorari. SUTHERLAND, J., in reference to the evidence thus offered and rejected, says: " I think it" (the evidence) "was properly excluded. It could legitimately have no influence with the jury. It did not tend in the slightest degree to impeach the testimony of the witness, or show that the narration was not true. Admitting that he had improperly endeavored to compromise the prosecution, his positive testimony in relation to the fraudulent conduct of the prisoner was not thereby impeached." If an attempt to compromise a criminal prosecution does not impair the credit of a witness, can it be said that being a party to a usurious agreement is any higher evidence of the absence of moral worth?

By reason of the admission of incompetent evidence the judgment must be reversed and a new trial ordered, costs to abide the event.

*Judgment reversed and new trial ordered.*